BEESON GREGG, d. b. plaintiff in error, *vs.* WILLIAN BANNER, qui tam. p. b. defendant in error.

On a writ of error, after citation and appearance of the respondent, and assignment of errors, though there be no joinder in error, the *suit* is *pending* in the appellate court and does not abate (where the cause of action survives) by the death of either party. New parties may be made in the appellate court.

WRIT of error to the judges of the Superior Court, New Castle county. (See vol. 1, 523.)

Record received and filed; respondent cited, and causes of appeal filed. June term, 1837; death of plaintiff in error suggested, and James Canby, his executor, made a party: same term, hearing and *decree* reversing the judgment below, with costs, and *remanding the record.*

At a subsequent day, to which the court stood adjourned, and *after*

the record in this case had been sent down, Mr. *Bayard,* for respondent, moved and obtained the following rules:

1st. That the appellant show cause why the record in the above cause shall not be demanded from the court below.

2d. That the appellant show cause why, upon the return of the record, the error be not corrected, if there be one in rendering judgment thereon after the death of the plaintiff; upon the allegation of the defendant that the writ had abated by the death of the plaintiff in error.

These rules were argued at the June term, 1838, by *R. H, Bayard,* for the respondent; and *Hamilton* and *J. A. Bayard,* for the appellant.

In support of the rules, it was contended, that the writ of error abated by the death of the plaintiff in error, so that the court had no power to hear the cause, or do otherwise than send the record back, that the party might sue out another writ of error, if he pleased, after making proper parties below.

At common law, the writ of error abated on the death of the plaintiff, or by the death of one of the plaintiffs, if more than one. The statute 8 and 9, *Wm. 3d, ch* 11, *s.* 7, corrected this where there was more than one plaintiff, but left it as at common law where there was but one plaintiff. 1 *Yelverton,* 208, *Spenser & Woodward* vs. *Count Rutland ;* 1 *Ld. Raymond,* 244, *Penoyer* vs. *Brace ;* 1 *Ibid.* 71. If plaintiff die after plea of in nullo est erratum, the writ abates; not so of the defendant. 3 *Brown. Par. Cases,* 507.

Some of the elementary books do state the principle, that after errors assigned, the suit does not abate by plaintiff's death ; but this is not sustained by the authorities, and the compilers have mistaken it. Tidd, who so states it, refers to Crompton as authority. *Crompton's Practice,* 384. " If there be several plaintiffs in a writ of error, and one die, it abates the writ ; not so if one defendant die. If plaintiff in error die before errors assigned, the writ abates ; but if he die after error assigned and a *joinder in error,* it does not abate the writ." This last clause is overlooked by Tidd, and by the note to Saunders. But it is very important ; for until error joined the court is not seised of the cause so as to go on with it, without the action of the defendant in error. 2 *Sellon's Prac.* 407 ; 2 *Ibid.* 406 ; 2 *Ld. Raymond,* 1295.

Has this been altered by our constitution? *Art.* 6, *Sec.* 18. " By the death of any party no suit in chancery or at law, where the cause of action survives, shall abate," &c.

" No *suit* in chancery or at law." This refers to original suits; does not apply to a writ of error. " *Where the cause of action survives.*"

This shows that it had reference to original suits; for a judgment necessarily survives, and a writ of error, being on a judgment, the idea that the cause of action did not survive, could not apply to it. After judgment, there is no distinction as to the cause of action; it is rem adjudicatam.

*Hamilton* and *J. A. Bayard,* contra, contended—

1. That the motion was too late, the record having been sent down to the Superior Court.

2. That it was too late after the death had been suggested and plaintiff's executor admitted a party, and the case argued.

3. They agreed that before the statute of William, by the death of one plaintiff in error the writ abated; and afterwards, by the death of a sole plaintiff, before joinder in error; but they contended—1st. That under our practice, error was joined when the parties went into the argument, and it was the duty of the clerk to make the entry of " in nullo est erratum ;" and 2d. That the whole subject was governed by constitutional provision, which saved the abatement of the suit. [2 *Saund. Rep.* 101, *n ;* 2 *Tidd,* 1028.] Art. 6, sec. 18. " By the death of any party, no suit in chancery or at law, where the cause of action survives, shall abate," &c. A writ of error is a *suit;* the right to sue it out is the right of action. The damage done to the party by the erroneous judgment below is the cause of action. *Ellenborough, Chief Justice,* in 1 *Barn. & Ald.* 586 ; 7 *Term Rep.* 333, *Bachelor* vs. *Ellis ;* 1 *Barn. & Ald.* 586.

The difference between the statute *Wm.* and our constitution, consists only in the words *suit* and *action,* between which there is no distinction. 8 *Coke's Rep.* 153, 4, 611. *Suit* extends to an execution; much more, then, to a writ of error. Where the court is giving a construction to a remedial constitutional provision, it would be inclined to give a much larger extent to the meaning of the word suit, than in construing the effect of such a word in a release, which is the act of the party. And the justice of the case is just as strong, that a man should not be cut off from his writ of error by the dispensation of Providence in the death of the party, as that he should not be cut off from continuing a suit at law or in equity before judgment.

*R. H. Bayard,* in reply :

Are we too late ? No principle is better established than that during the term the record is in the bosom of the court; and any alteration may be made. Here the term was continued until this time, for the very purpose of this motion.

Has there been any joinder in error in this case, or can the plea be now entered ? True, by the practice the plea is not drawn up,

but it is the duty of counsel to have the entry made; and the written rule of court requires it to be made, and requires the plaintiff to lay a rule on the defendant to join in error. Before this plea is entered it is competent for the defendant to alledge diminution of the record, and this is the very object here.

As to the question of abatement there is no conflict, even in the elementary books, except as to defendant. The principle is expressly decided in *Yelverton*, that the writ abates by the death of the plaintiff at any time, even after plea pleaded of in nullo est erratum.

*Serg. Wms.*, in his note to *Saunders*, though generally of great authority, refers to the very cases I cite, and which do not sustain him; and he makes another capital error in the same note. He makes no distinction between the death of a sole plaintiff and one of several plaintiffs in error, though his note was made after the statute 8 and 9 *Wm.*, which makes the distinction, and which he does not notice.

The chancellor delivered the opinion of the court:

*By the Court:*

JOHNS, jr., *Chancellor.*—In support of the rule granted in this case, it has been contended by defendant's counsel, that the writ of error had abated by the death of the plaintiff in error, and that it was the duty of this court, on that fact being suggested and admitted, to have remanded the record to the court below. To maintain the correctness of this position, he has relied upon the rule of the common law, relative to the abatement of suits and writs of error, and has insisted that the constitutional provision does not reach this case.

Independent of the statutory provision, in England the death of a party, if a sole plaintiff or defendant, necessarily abated the suit, either original or in error; if several parties, plaintiffs or defendants, and the interest joint, the same result followed from the death of any one of the parties. This defect was remedied by the statute of 8 & 9, *William 3d, ch.* 4, *sec.* 7. The words in the English statute are, " any action or writ," which have been determined by judicial construction to include writs of error and cases pending thereon. In the constitution of the State of Delaware, art. 6, sec. 18, the words used are different, being, " no suit in chancery or at law."

It has been alledged, that after the assignment of error, no joinder having been actually entered on the record, prior to the suggestion of the plaintiff's death, there was no suit pending. The decision of the question submitted to our consideration will, therefore, first require that we ascertain whether, as this case stood at the time of plaintiff's death, there was an existing suit. If there was a suit, then it would be difficult to understand how it could be a casus omissus,

as the words of the constitution are, " *no suit*, in cases where the cause of action survives." We will then inquire, what was the situation of the case in error after errors assigned. The writ of error is no more than the process issuing from the Court of Errors and Appeals, requiring the inferior court to send up the record, after final judgment; for until the parties as suitors, have finished their case in the inferior, they have no right to ask the judgment of the Superior Court. When the record is sent up, the writ of error has performed its office; the plaintiff in error, having incepted the proceeding and become a party in the Court of Errors and Appeals, the citation or process of the court is awarded to obtain the appearance of the defendant. The parties being before the court, and the record of the inferior court brought up, the plaintiff, by the assignment of errors, asks or demands the judgment of the court upon the matters he alledges as erroneous in the judgment rendered below. If, at this stage of the case, it be not a suit pending in error, I am at a loss to define it; as, in the court below, after declaration filed, you have a suit, although it be not at issue, yet it is a suit pending; so here, although the defendant had not joined by adding on the record the words " in nullo est erratum," which might be required before the case could be heard. Yet this being necessary to make up the issue in the suit, renders it apparent, that they are not to constitute the suit itself; for it must exist before these words can be introduced into it. I think it is, therefore, manifest that the suit in error is altogether distinct and different from the issue or issues which the pleadings present for the judgment of the court. Hence it does appear to my mind, unquestionable, that after the assignment of errors, and, I would say, after the record is brought up and the parties have appeared, although the assignment of errors has not been made, the suit in error is pending.

It is admitted in the case before us, the cause of action, being a judgment, survives; then it follows that, according to the very words of the constitution, the death being suggested, the proper party must be made, unless the circumstance of the case being in the Court of Errors and Appeals, prevents that court making a party on its own record, and to a suit pending before it. I apprehend, it can scarcely be thought necessary to pursue the subject further, as we are well satisfied, in the condition the cause was at the death of the plaintiff in error, there was a suit at law; (for it was not in equity,) and the constitution has provided for all cases, either at law or in equity, and has not confined the remedy to any particular court, the words of the 18th section being, " by the death of any party, no suit in chancery or at law, where the cause of action survives, shall

abate, but until the legislature shall otherwise provide, suggestion of such death being entered of record, the executor or administrator of a deceased petitioner or plaintiff, may prosecute the said suit; and if a respondent or defendant die, the executor or administrator being duly served with a scire facias, thirty days before the return thereof, shall be considered as a party to the suit, in the same manner as if he had voluntarily made himself a party; and in any of those cases the court shall pass a decree or render judgment for or against executors or administrators, as to right appertains."

As the constitutional remedy, in its mode of application, varies according to the relation in which the party deceased stood as plaintiff or defendant, and in one case authorizes the admission of the personal representative on suggestion, and in the other requires a scire facias to issue, it does appear to me conclusive upon the question as to the court in which the party must be made. For, as in the case we are considering, it often happens that the plaintiff below becomes the defendant in error, the parties litigant changing sides. If then, the remedy is to be properly applied, it can only be done in the court having possession of the suit, on whose record the suggestion is made, and where the parties' true position, as to the cause pending, is apparent.

I would here, in corroboration of the opinion the members of this court unanimously entertain upon the question, refer to the case of *Summerl* vs. *Dauphin's adm'r.*, in which the High Court of Errors and Appeals of this state, by an express order in the cause, directed the party to be made. The case may be found on the records of that court, from which it appears that, August 6th, 1814, the death of Joseph Summerl was suggested and admitted; and it was ordered by the court, that the personal representatives of Joseph Summerl, deceased, when duly constituted, be made parties. And, July 25th, 1814, Isaac W. Norris, administrator c. t. a. of Joseph Summerl, deceased, was admitted a party to prosecute the appeal.

From the best consideration we have been able to give the questions submitted in the argument of the counsel, we are of opinion, that the rules granted to show cause, should be discharged.

*Hamilton* and *J. A. Bayard*, for appellant.